**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Terry HUDSON (93–5955) and Randal
McPherson (93–5956), Defendants–
Appellants.**

**Nos. 93–5955, 93–5956.**

United States Court of Appeals,
Sixth Circuit.

Argued May 12, 1994.

Decided May 11, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied in No. 93–5956
June 27, 1995.

John P. MacCoon, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Chattanooga, TN, for plaintiff-appellee.

Perry H. Piper (argued and briefed), Federal Defender Services of Eastern Tennessee, Inc., Chattanooga, TN, for defendants-appellants.

Before: JONES and WELLFORD, Circuit Judges; ENSLEN,* District Judge.

ENSLEN, D.J., delivered the opinion of the court, in which JONES, J., joined. WELLFORD, J. (pp. 749–50), concurred in all parts of the opinion of the court and delivered a separate opinion as to part II.C.

ENSLEN, District Judge.

A superseding indictment charged defendants Terry Hudson and Randal McPherson with conspiracy to commit armed carjacking

---

* The Honorable Richard A. Enslen, United States District Judge for the Western District of Michi-

in violation of 18 U.S.C. § 2119, attempted carjacking, use of a firearm in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) and 2, and being felons in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Appellants' trial took one full day. After deliberating one and a half hours, the jury returned guilty verdicts on all counts on May 12, 1993. Appellant McPherson was sentenced to 196 months, and appellant Hudson was sentenced to 157 months.

Appellants have raised several challenges to their convictions and sentences. With regard to their convictions, appellant Hudson claims that the double jeopardy clause prohibits the government from prosecuting 18 U.S.C. § 2119 carjacking and 18 U.S.C. § 924(c) weapons charges at the same time. Appellants further allege that the trial court erred when it refused to sever the felon in possession count, permitted proof of multiple felonies, and permitted proof of "stale" convictions. In addition, appellant Hudson asserts that the evidence was not sufficient to convict him.

With regard to their sentences, appellants argue that the trial court erred when it assigned two points to each defendant for obstruction of justice/perjury, denied both appellants acceptance of responsibility points, and assigned five additional points to appellant McPherson for brandishing a firearm.

### Facts

On the evening of January 27, 1993, appellants Terry Hudson and Randal McPherson planned to rob victim Glenn Cantrell. Cantrell owns his own wrecker service, and the defendants knew that he often carried large sums of cash to car sales.

On January 28, 1993, the appellants arranged for Cantrell to meet McPherson at a Waffle House restaurant in Ooltewah, Tennessee, to tow a disabled car. When Cantrell arrived, McPherson got in the tow truck and directed Cantrell to the isolated, wooded place where McPherson's car was located.

gan, sitting by designation.

On the way, McPherson commented on how expensive Cantrell's truck must have been.

After they arrived at the car, Cantrell checked under the hood of the car, and then McPherson grabbed him. There is a dispute about whether McPherson made a statement, and if so, what he said. When Cantrell tried to get away, McPherson hit him on the head with a rock, creating a wound which later required 100 stitches.

The disputed words are "truck and" and "fuckin'." On direct, Cantrell testified that McPherson grabbed him as they were looking under the hood and said, "ain't nothing the matter with my car. This is a holdup. We want your truck and your money." Consolidated Joint Appendix ("CJA") at 90. When called as a rebuttal witness, Cantrell testified that both defendants made the "we want your truck and your money" statement.

Defendants McPherson and Hudson testified, however, that they said: "Give me your f_ _ _ing money." McPherson further testified that Hudson clarified their request when Cantrell "volunteered" his truck (in exchange for his life) by stating "I don't want your f_ _ _ing truck, I want your money." CJA at 148. Hudson's testimony was consistent with McPherson's. CJA at 124, 126–27.

In any event, it is undisputed that at about the same time McPherson accosted Cantrell under the hood, Hudson ran out of the nearby woods with a shot gun, yelling, "hold it buddy, or I'll blow you in two." He was wearing a ski mask and carrying duct tape. Cantrell told defendants they could have his truck and money, but asked them not to kill him. As he pled for his life, he backed up to get to his truck, which was still running.

Cantrell testified that as he edged toward his truck to get away, McPherson yelled to Hudson "shoot him, shoot him." Hudson testified that McPherson yelled "don't shoot him." CJA at 125; accord, McPherson testimony at CJA 150. Cantrell was able to get in his truck and drive away. Cantrell immediately found a police officer, and defendants were apprehended shortly thereafter. De-

fendants ultimately did not get Cantrell's truck, or his money.

## *Discussion*

### I. Challenges to the defendants' convictions.

#### A. *Double Jeopardy*

■ Counts I and II of the indictment charged appellants with violation of 18 U.S.C. § 2119, the armed carjacking statute. This statute criminalizes the theft of a car from the "presence of another" while "possessing a firearm" during the commission of the offense.

Count III of the indictment charged appellants with violation of 18 U.S.C. § 924(c), which requires an enhanced, mandatory, consecutive, five-year sentence for use of a firearm "in relation to any crime of violence." This statute states that the five-year sentence shall be "in addition to the punishment provided for such crime of violence."

Appellant Hudson argues that prosecution and punishment under both of these statutes violates the double jeopardy clause, because use of a weapon is an element of the crime of armed carjacking.[1] This argument is foreclosed by a recent decision of the Sixth Circuit, *United States v. Johnson*, 22 F.3d 106 (6th Cir.1994). That case decided the exact question presented here. The *Johnson* panel followed the reasoning of *United States v. Singleton*, 16 F.3d 1419 (5th Cir.1994), and held that Congress expressly intended punishment under § 924(c) to be cumulative with punishment required by the statute prohibiting the underlying violent crime. Therefore, the *Johnson* court concluded, punishment under both § 2119 and § 924(c) does not violate the double jeopardy clause. This court is bound to follow that conclusion.

#### B. *Severance of the Felon in Possession Count*

■ Both appellants asked the trial court to sever the felon in possession count from the carjacking and weapon counts. The trial court denied the motion to bifurcate; and the

---

1. This argument was only raised by defendant Hudson, and not McPherson, though it applies to both with equal force.

appellants did not renew the motion at the end of the evidence.

Hence, this panel is barred from ruling on the merits of appellants' claim. As of January 1, 1987, a motion to sever counts or co-defendants is deemed waived if it is not renewed at the end of the evidence. *United States v. Swift*, 809 F.2d 320 (6th Cir.1987). This procedure allows the trial court to assess whether the joinder was in fact prejudicial, and prevents a defendant from deliberately failing to make a meritorious motion to wait and see what verdict the jury returns. *United States v. Terry*, 911 F.2d 272 (9th Cir.1990). Because appellants did not renew their severance motion, they are procedurally foreclosed from presenting it to this Court.

### C. *Proof of Multiple Felonies*

■ Count IV of the superseding indictment charged the defendants with violating 18 U.S.C. § 922(g)(1), which prohibits felons from possessing firearms. The indictment lists two felonies for each defendant. Although appellants agreed to stipulate that they were felons, the government was permitted to prove not only the fact of the felonies, but to admit evidence of the particular crimes. In addition, the government was permitted to prove *both* felony convictions of each defendant.

This was not error. In the Sixth Circuit, the government is entitled to prove the felonies it has alleged. *United States v. Burkhart*, 545 F.2d 14 (6th Cir.1976) (government is not required to accept stipulation and may prove more than one felony in support of felon in possession charge); *accord United States v. Ford*, 872 F.2d 1231, 1238 (6th

Cir.1989), *cert. denied*, 495 U.S. 918, 110 S.Ct. 1946, 109 L.Ed.2d 309 (1990) (proof of six different felonies to support felon in possession charge not in error).

Appellants assert that *Burkhart* should be distinguished because the *Burkhart* defendant only agreed to stipulate to the lesser of two felonies, while these appellants agreed to stipulate to either one. This distinction is unpersuasive, and appellants' claim on this point must be rejected.[2]

### D. *Proof of "Stale" Convictions*

■ Appellant Hudson asserts that the trial court erred by permitting proof of "stale" convictions. This contention is without merit. In contrast to the ten-year rule of Fed. R. Ev. 609(b), the felon in possession of a firearm statute, § 922(g), places no age limit on the felonies which may be used to support a felon in possession charge.

### E. *Sufficiency of the Evidence*

■ Appellant Hudson argues that the evidence was not sufficient to support his conviction. Basically, Hudson asserts that if he wanted to take the truck, he would have done so, and that the victim just confused the word "fuckin'" with "truck and" or "wrecker."

We refuse to vacate the jury's guilty verdict on this basis, because we find that a rational jury could have concluded guilt beyond a reasonable doubt. *United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir. 1986), *aff'd* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). A rational jury was entitled to credit the victim's statement, and find that appellant intended to take his truck.[3]

---

**2.** It is important to note that our ruling on this point is limited to the proposition that introduction of the nature of a felony, and/or more than one felony, to support a felon in possession charge is not, *in and of itself*, error. In other words, in some cases, the government's decision to prove each felony might tip the scales and render the joinder of counts too prejudicial, but an agreement to stipulate in the same case could reduce prejudice enough that joinder is permissible.

**3.** Interestingly, we cannot find a place in either appellants' testimony where they described what *McPherson* did or did not say when he grabbed

Cantrell under the hood of the car. Instead, both appellants ascribe the "hold up" statement to the armed Hudson. In contrast, the victim testified it was McPherson who first told him this was a hold up. The implication of McPherson's testimony was that he didn't say anything to the victim at first, and Hudson announced the defendants' intentions when he arrived on the scene with the shotgun.

Therefore, we note that in order for the jury to credit appellants' testimony over the victim's, it would not only have to conclude that the victim heard a word incorrectly (truck/fuck), it would have to conclude that the victim was mistaken

## II. Sentencing Issues.

18 U.S.C. § 3742(e) provides the standard of review for the following three issues. It instructs that upon review of the record, the court of appeals shall determine whether the sentence:

(1) was imposed in violation· of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

    *     *     *     *     *     *

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

### A. Obstruction of Justice/Perjury

■ The trial court held that appellants lied under oath about their intent to commit carjacking, and therefore added two points to each defendant's base offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1.

It is arguable that the jury verdict required this finding. In any event, the district court's decision was based on a pure credibility determination which will not be disturbed by this Court.

### B. Acceptance of Responsibility

■ The trial court denied acceptance of responsibility points for the same reason it assigned obstruction of justice points—appellants maintained that they did not commit the crime they were convicted of, carjacking.

Appellants essentially argue that the fact that they admitted committing a serious crime, armed robbery, should negate their denial of carjacking. Appellant McPherson suggests that Application Note 2 to the acceptance of responsibility provision, § 3E1.1, which excepts defendants who go to trial to challenge the applicability of a statute to their conduct, should be applied.

when he reported that McPherson spoke to him

Appellants' arguments are without merit. McPherson's "not guilty" plea cannot be construed as a challenge to the carjacking statute; instead he contested the victim's version of the facts. As the application notes state, "a defendant who falsely denies . . . relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. 3E1.1 App. note 1(a). The trial court's determination that appellants did not accept responsibility for their acts should not be disturbed.

### C. Double Counting

■ Appellant McPherson argues that the trial court erred when it assigned five additional points to his offense scoring for brandishing a firearm. Because he did not raise this issue at sentencing, this court's review is limited to "plain error." *United States v. Fountain*, 2 F.3d 656 (6th Cir.), *cert. denied sub nom. McEaddy v. United States,* —— U.S. ——, 114 S.Ct. 608, 126 L.Ed.2d 573 (1993).

McPherson received five additional points pursuant to U.S.S.G. § 2B3.1(b)(2)(C) because he "brandished, displayed or possessed" a firearm during a robbery. Appellant argues that because possession of a firearm is an essential element of the offense of conviction, carjacking, his sentence for that crime should not be enhanced for using a firearm.

This appeal raises two questions; the first more difficult than the second. The first question is one of statutory analysis, and that is whether it is plain error to enhance for a factor such as possession of a firearm, when possession of a firearm is already an element of the offense of conviction. This could happen with a § 2119 conviction, because a carjacking conviction only requires weapon *possession*. § 2B3.1(a) would provide a base offense level of 20 for the crime of robbery, and subsection (b) would add two points because the crime was carjacking. In addition, subsection (b)(2)(C) would add five more points because a firearm was brandished, displayed *or possessed* during a robbery. There is a very good argument that in such a case, the two point addition which reflects

first.

the seriousness of carjacking (as opposed to a more typical robbery) already contemplates the possession of a weapon, because the act does not constitute the federal crime of carjacking if a weapon is not possessed. Therefore, the additional points for weapon possession during the crime could constitute "double counting."

■ However, we need not resolve that difficult question, because it is not raised by the facts of this case. Instead, the question properly considered in the context of this case is whether it is plain error to enhance a carjacking sentence for *brandishing* a firearm when an element of the offense of conviction is *possession*. As presented by the facts of this case, this application of the Sentencing Guidelines is not plain error. Defendant McPherson both possessed a firearm, and did the additional, separate, and more dangerous act of pointing that firearm at his victim. There is no "double counting" problem when a carjacking accomplished with a gun hidden in a pocket, and carjacking accomplished by pointing a shotgun at a victim for some period of time and threatening to "blow him in two," do not result in the exact same sentence. Because those acts are qualitatively different, the sentences for them may properly reflect that difference.

Therefore, the holding of the trial court is affirmed on the limited ground that in this factual scenario, the defendant committed an additional act which made possession of a firearm more dangerous, and Congress can choose to punish that particular use of a firearm during a crime more seriously.[4]

---

4. Defendant McPherson directs the court to the case of *United States v. Hudson,* 972 F.2d 504 (2d Cir.1992), and argues by analogy. In that case, the appellate court reversed the trial court's sentencing enhancement for "otherwise using a dangerous weapon." The defendant attempted to run over U.S. marshals with his car, and his base offense level was calculated under the aggravated assault guideline. This guideline was chosen, instead of the impeding officers while possessing a dangerous weapon guideline, because the defendant not only possessed, but in fact *used,* a dangerous weapon (his car). Then the district court also imposed a four level enhancement because defendant "otherwise used" a dangerous weapon.

The appellate court held that application of the enhancement would result in "impermissible

WELLFORD, Circuit Judge, concurring.

I concur in all parts of Judge Enslen's opinion, but I write separately with regard to part II.C., which deals with double counting.

The difficult part of this case involves the five-point enhancement for "brandishing" a firearm. U.S.S.G. § 2B3.1(b)(2)(C) increases five levels "if a firearm was brandished, displayed, or possessed" in the underlying robbery offense. This increase follows a descending order: (2)(A) calls for a seven-level increase for discharge of a firearm; and (2)(B) a six-level increase "if a firearm is otherwise used."

The guidelines, on their face, make brandishing, displaying or possessing a firearm as equivalent offenses providing the same enhancement. In application note 2, § 2B3.1, it is stated that "when an object that appeared to be a dangerous weapon was brandished, displayed or possessed, treat the object as a dangerous weapon." Once again, these terms, "brandish, display, or possess" are used to indicate the same level of offense.

On the other hand, the term "brandished" is defined in application note 1(c) to § 1B1.1 "means that the weapon was pointed or waived about, or displayed in a threatening manner." As a matter of common sense, "brandished," as thus defined, indicates a more serious and threatening action than mere "possession" of a weapon. It is true that "possessing a firearm as defined in section 921 of this title"[1] is an element of the

double counting." The court's reasoning revolved around the fact that the guidelines have special provisions to cover situations when the use of an ordinary object as a dangerous weapon transforms a minor assault into an aggravated one. Therefore, it would be "double counting" if the same act that raised the base offense level were the basis of an enhancement also.

This case would support defendant's position if the question was the first one outlined, possession plus possession. However, because McPherson committed two distinct acts, possession plus brandishing, allowing the enhancement to stand in this case is not contrary to *Hudson.*

1. A firearm is defined in 18 U.S.C. § 921(a)(3) as "any weapon ... which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."

offense of carjacking, 18 U.S.C. § 2119. Several district court cases have held that a defendant may not be punished both for "use" of a firearm during carjacking, a "crime of violence," and also the use of a firearm penalty under § 924(c).

The first of these published cases, *United States v. Singleton*, 824 F.Supp. 609 (E.D. La.1993), concluded "the two statutes involved do not reflect a clear intent by Congress to impose cumulative punishments."[2] That decision was reversed, however, in 1994 by a unanimous court which held that "§ 924(c) clearly indicates Congress' intent to punish cumulatively violations of § 924(c) and 2119." *United States v. Singleton*, 16 F.3d 1419, 1425 (5th Cir.1994); *see also United States v. Portillo*, 18 F.3d 290, 291 (5th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 244, 130 L.Ed.2d 166 (1994).

Shortly thereafter, this court adopted the same position as the Fifth Circuit in construing the effect of the two statutes. *United States v. Johnson*, 22 F.3d 106, 108 (6th Cir.1994). ("Congress intended to impose additional punishment for the same conduct.") Were I deciding this issue on a clear slate, I would hold that cumulative firearm punishment should not be imposed because the statutes involved appear to be ambiguous and unclear about congressional intent. *Johnson*, however, clearly holds that Congress had in mind imposing "additional punishment" in this situation.

I, therefore, concur also as to part II.C.

---

**2.** The other cases, also holding against cumulative punishment, *United States v. Smith*, 831 F.Supp. 549 (E.D. Va.1993), and *United States v. Moore*, 832 F.Supp. 335 (N.D.Ala.1993), pre-date the circuit court decisions to the opposite effect.